1
2
3
4
5

6           IN THE UNITED STATES DISTRICT COURT

7              FOR THE DISTRICT OF ARIZONA

8

9    Gary Karpin,                          No. CV 13-02375 PHX JAT (MEA)

10                    Petitioner,            **REPORT AND**
                                             **RECOMMENDATION**
11   v.

12   Charles L. Ryan,   Attorney General of the
     State of Arizona,
13
                        Respondents.
14

15

16   **TO THE HONORABLE JAMES A. TEILBORG:**

17        Plaintiff's pro se habeas action seeks relief from his state court convictions.

18   Petitioner docketed a petition pursuant to 28 U.S.C. § 2254 and 448 pages of exhibits on

19   November 18, 2013.  Petitioner docketed a motion for discovery and two memoranda on

20   December 2 and December 5, 2013, and a motion to expand the record on December 10,

21   2013.   Petitioner then docketed a memorandum on December 20, 2013, another

22   memorandum on December 27, 2013, and an addendum memorandum on December 30,

23   2013.

24        On January 16, 2014, the Court dismissed the petition and the memoranda in

25   support and ordered Petitioner to docket an amended petition.  See Doc. 15.  Petitioner

26   docketed an amended petition for relief (Doc. 16) on January 23, 2014.   Respondents

27   docketed an answer (Doc. 25) to the amended petition on July 3, 2014, and Petitioner

28   docketed a reply to the answer to his petition on July 14, 2014, and further docketed an

amended reply (Doc. 31) to the answer to his petition on July 21, 2014.[1]

**I Procedural background**

Respondents aver, quoting from the Arizona Court of Appeals' memorandum decision in Petitioner's direct appeal:

> [Petitioner] received a juris doctor degree from Vermont Law School in 1985 and was licensed to practice law in Vermont and Maine in 1987. He was suspended from the practice of law in Maine in 1991 and disbarred in Vermont in 1993. In 1996, [Petitioner] came to Arizona, but neither applied for, nor was admitted to practice law.
>
> [Petitioner] began a private mediation practice in Arizona under the name of three different business entities: Divorce with Dignity, Divorce Associates, and Relationships with Dignity.
>
> The State Bar of Arizona (SBA) became aware that [Petitioner] had been disbarred in Vermont. The SBA sent [Petitioner] a letter in 1998 and requested that he stop using labels, such as "J.D.," in a manner that implied that he was authorized to practice law in Arizona. The letter also requested that he stop preparing legal documents, giving legal advice, or negotiating legal matters. Sometime after 1999, Fran Johansen, who was the newly-created unlicensed practice of law attorney with the SBA, sent [Petitioner] a second letter about complaints and again requested that he cease any activities that appeared to be the practice of law. [Petitioner] responded with a fax in which he claimed that his work was "attorney supervised" and that all his clients signed a fee agreement that clearly stated that he was not an attorney. [Petitioner] also threatened to sue the SBA if it contacted any of his clients.
>
> In response to additional complaints, Johansen sent [Petitioner] a third letter, in 2004, advising him that he had been reported as engaging in activities that violated Arizona Supreme Court Rule 31 prohibiting the unauthorized practice of law. The 2004 letter asked [Petitioner] to cease activities such as preparing legal documents for filing in court, negotiating legal rights, and/or using designations such as "J.D.," "Esq." and "law office" in a manner that was "likely to induce others to believe that [he was] authorized to practice law." Johansen also asked [Petitioner] to send her a letter within thirty days confirming his compliance with the SBA's request. [Petitioner] responded by fax, assuring her that he was working under the supervision of The Green Law Group, LLC, and that he was a paralegal and law clerk for Robert Green.

---

[1] Petitioner also filed motions seeking discovery and an evidentiary hearing, which motions were denied, see Doc. 36 and Doc. 37, and memoranda in further support of his habeas claims. See Docs. 39, 40, 31, 42.

The SBA filed a civil lawsuit against [Petitioner] in 2004, seeking an injunction against his practice of law and requested restitution for clients who had paid him for legal services. [Petitioner] responded by filing a lawsuit against Johansen, the SBA and its chief counsel for, among other things, defamation, slander, restraint of trade and infliction of emotional distress.

Yvette Gray (Gray) took over Johansen's job as the SBA's unauthorized practice of law attorney and in 2004 worked on the lawsuit involving [Petitioner]. During Gray's tenure, she discovered that [Petitioner] operated several businesses, including Divorce with Dignity and Divorce Associates. Advertisements for Divorce with Dignity contained statements like "Former Prosecutors," "Certified Paralegals" and "Full representation in court by an Arizona Licensed attorney." The SBA sought an injunction to prohibit [Petitioner] from practicing law without a license.

[Petitioner] agreed to drop his lawsuit against the SBA in July 2004 and also expressed an interest in coming to a resolution of the SBA's actions against him. [Petitioner] signed a Cease and Desist Agreement as an end to the Bar's civil action against him on May 10, 2005. In signing the agreement, [Petitioner] acknowledged that he was not authorized to practice law in Arizona or certified as a legal document preparer. The agreement further acknowledged that [Petitioner] was disbarred in Vermont and that he had practiced law in Arizona without the supervision of a licensed attorney.

As part of the agreement, [Petitioner] further agreed to provide the SBA "within thirty (30) days, the name(s) of his supervising attorney, and update the information within seven (7) days if changes are made." However, [Petitioner] never provided Gray or the SBA with such a letter confirming that he was being supervised by an attorney, licensed to practice in Arizona. The Maricopa County Attorney's Office (MCAO) began investigating [Petitioner] in February 2005, after the office received two boxes of documents from the SBA. MCAO obtained copies of advertisements [Petitioner] had posted in different Phoenix area newspapers and magazines and discovered that [Petitioner] used several different business names for his mediation practice in addition to the ones known to the SBA. MCAO also obtained a copy of a mediation overview that [Petitioner] distributed to clients, which contained several letters of recommendation, including one that noted that [Petitioner] was "a sterling example of what a lawyer should be."

Through a search of [Petitioner's] office pursuant to a search warrant, MCAO obtained a business card for Divorce Associates with [Petitioner's] name on it which also said "juris doctorate," "former prosecutor" and "Superior Court certified." On the wall of [Petitioner's] office there was a Vermont Law School diploma, a Bar certificate for the State of Maine, a

certificate of membership in the Trial Lawyers Association of America, and a certification of admission to practice in the U.S. District Court of Maine. Also a badge bearing [Petitioner's] name and "State's Attorney" for Orleans County, Vermont, was found in [Petitioner's] desk drawer.

The State charged [Petitioner] with twenty-five counts of theft by means of material misrepresentation and one count of fraudulent schemes and artifices, a Class 2 felony in October 2006. One count of theft was dismissed prior to trial. The trial court granted [Petitioner's] Rule 20 motion on count 11, theft, at the end of the State's case in chief.

Doc. 25 (Answer) at 2-5 (footnote omitted).

Petitioner was originally indicted for crimes related to his unauthorized practice of law in CR2005-010928. As explained more fully *infra*, Mr. Urbano represented Petitioner in CR2005-010928 from July 18 through July 26, 2005, at which time Mr. Urbano withdrew from representation in that matter because he was informed he might be called as a witness for the prosecution in the criminal proceedings against Petitioner. Id., Exh. A & Exh. B. The 2005 criminal matter was later dismissed, and Petitioner was re-indicted on the charges in 2006 in CR2006-031057. Mr. Urbano did testify at Petitioner's trial on the 2006 charges. At some point during Mr. Urbano's testimony he referred to his prior legal representation of Petitioner—at that time Petitioner moved for a mistrial, which motion was denied. See id. at 11.

Petitioner represented himself at his criminal trial regarding the 2006 charges after waiving his right to counsel in writing on December 14, 2007. Id., Exhs G, H, I. Mr. Valverde was appointed as Petitioner's advisory counsel. Id., Exh. H & Exh K. Petitioner testified in his own defense at his trial, with his advisory counsel Mr. Valverde examining Petitioner using questions prepared by Petitioner.

At the conclusion of a 28-day trial, the jury found Petitioner guilty on the remaining counts of the indictment—two of the counts had been dismissed prior to trial. On November 21, 2008, Petitioner was sentenced to the presumptive terms of imprisonment on each of the counts of conviction on the charges of theft. Id., Exh. O.[2]

---

[2] Respondents aver:

The theft counts, based on the amount of monies at issue, were the following:

Petitioner's aggregate sentence totals 15.75 years imprisonment.  Petitioner was also sentenced to a "probation tail" of five years pursuant to his conviction on the count of fraudulent schemes and artifices.  Id., Exh. O.  Following a restitution hearing, the trial court ordered Petitioner to pay restitution to the victims in the amount of $240,448.99.  Id., Exh. Q.

Petitioner took a timely direct appeal from his convictions and sentences.  Id., Exh. P.  In his opening brief, Petitioner argued that the trial court abused its discretion by denying his motion for acquittal pursuant to Rule 20, Arizona Rules of Criminal Procedure, and that the jury's guilty verdicts were not supported by "substantial evidence."  Id., Exh. R.  The brief on appeal did not cite any federal constitutional provision or any opinion of a federal court in support of Petitioner's claims.

The Arizona Court of Appeals issued a memorandum decision on October 12, 2010, affirming Petitioner's convictions and sentences.  Id., Exh. T.  In its decision the appellate court found that, in addition to Petitioner's own testimony, the state had met its burden of proof and had provided sufficient evidence that the trial court could properly deny Petitioner's Rule 20 motion.  Id., Exh. T.  The appellate court concluded that there was ample evidence presented at trial to support the jury's guilty verdicts.  Id., Exh. T. Petitioner sought review of this decision by the Arizona Supreme Court, which summarily denied review on April 19, 2011.  Id., Exh. Y.  Petitioner sought a writ of certiorari in the United States Supreme Court and the United States Supreme Court denied that petition. Id., Exh. DD.

Petitioner initiated an action for state post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, on November 22, 2011.  Id., Exh. FF.  On January

---

Counts 1, 2, 8, 9, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 24, and 25, involving an amount greater than $3,000 but less than, $25,000, were each Class 3 felonies; Counts 3, 4, and 6, involving an amount greater than $2,000 but less than $3,000, were each Class 4 felonies; Count 7, involving an amount greater than $25,000 but less than $100,000, was a Class 2 felony; Counts 5 and 10, involving an amount greater than $250 but less than $1,000, were each Class 6 felonies; and Count 23, involving an amount greater than $1,000 but less than $2,000, was a Class 5 felony.

31, 2012, Petitioner's appointed Rule 32 counsel notified the state court that he was unable to discern any colorable claim to raise on Petitioner's behalf.  Id., Exh. GG.

Petitioner filed a pro per brief in his Rule 32 proceedings, arguing that former Maricopa County Attorney Andrew Thomas violated Petitioner's due process and equal protection rights by expressing his personal belief in Petitioner's guilt at a live televised news conference and by intimidating the trial court by filing "fake criminal complaints against Maricopa County judges who opposed Thomas in their decisions and rulings." Petitioner also argued that the prosecutor, Ms. Vanwie, committed prosecutorial misconduct by obtaining Petitioner's trial strategy from his advisory counsel, Mr. Valverde, by conferring a gift upon Mr. Valverde's family, by exploiting her relationship with Mr. Valverde to seek an advantage, by lying about the location of defense witness Michelle Crist, by failing to report pervasive juror misconduct, and by intentionally interfering with the attorney-client privilege between Petitioner and his advisory counsel and his former counsel Mr. Urbano.  Petitioner further asserted Mr. Valverde was "intentionally ineffective" and personally and professionally compromised because Ms. Vanwie had conferred a gift upon Mr. Valverde during the trial and, in return, Mr. Valverde provided Ms. Vanwie with privileged information.  Petitioner alleged Mr. Valverde altered the questions Petitioner had drafted for his direct testimony in violation of Petitioner's right to represent himself and to testify in his own behalf.  Petitioner asserted Mr. Valverde remained "silent and non-adversarial" during his representation of Petitioner at sentencing.

Petitioner also asserted that Ms. Vanwie failed to report juror misconduct involving access to internet information about Petitioner and knowledge of a dismissed juror's contact with one of the state's witnesses, and that Ms. Vanwie's "friend[ing]" of jurors and witnesses after his trial violated his federal constitutional rights.  Petitioner further argued that Arizona v. Fish, 222 Ariz. 109, 213 P.3d 258 (Ct. App. 2009), constituted a significant change in the law affecting the trial court's rulings precluding Petitioner's defense witnesses and proposed jury instruction regarding material misrepresentations, and that appellate counsel failed to challenge these rulings on appeal.

Petitioner also alleged the state withheld exculpatory evidence—"the statement and location of material witness, Michelle Crist"—in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

Petitioner also asserted his former defense counsel, Mr. Urbano, who represented Petitioner for eight days in 2005, was intentionally unconstitutionally ineffective by testifying against Petitioner and because he used privileged attorney-client information to "convict his own client."  Petitioner further argued his appellate counsel was ineffective for failing to challenge the trial court's preclusion of defense witnesses, preclusion of proposed jury instructions, refusal to allow Petitioner to question jurors about misconduct, refusal to grant a mistrial after witness misconduct, admission of Mr. Urbano's testimony, granting of the state's motions in limine to preclude relevant evidence, and for failing to challenge Andrew Thomas' personal expression of Petitioner's guilt.  Petitioner argued that his convictions for the "Deprivation of Intangible Right of the Honest Services of a Licensed Provider" were no longer cognizable under the due process clause of the United States Constitution pursuant to <u>Skilling v. United States</u>, 561 U.S. 358 (2010), which constituted a significant change in the law.  Petitioner further argued that, although he profited financially from his businesses, this fact did not "alter the unconstitutional conviction of defrauding victims of non-monetary rights" because, he asserted, Petitioner had actually provided the services he promised to his alleged victims.

Petitioner further maintained he had met his burden of proof of asserting colorable claims for relief and that the government had infringed upon his Fifth and Fourteenth Amendment rights when Ms. Vanwie conferred a gift upon Mr. Valverde, thus compromising Mr. Valverde's loyalty to Petitioner.  Petitioner asserted the trial court should have questioned the jurors at an evidentiary hearing about juror misconduct, i.e., about whether the jury discussed a dismissed juror's contact with a state's witness. Petitioner also asserted that his rights to equal protection and due process were violated because the state presented insufficient evidence to support his convictions for "theft based on a fraud theory," arguing that he was licensed to practice law in at least one

jurisdiction and that each client signed a contract disclosing Petitioner's "non-attorney status" and that attorney Robert Green's supervision was "adequate authority" to conduct legal work and prepare documents without running afoul of the law.  Id., Exh. II.

On June 25, 2012, the state trial court summarily dismissed Petitioner's Rule 32 action pursuant to Rule 32.6(c), for "the reasons stated in the State's response." Id., Exh. LL.

On July 16, 2012, Petitioner sought review of the trial court's decision by the Arizona Court of Appeals.  Id., Exh. MM.  Petitioner averred: (1) he was denied the right to counsel under the Sixth Amendment when Mr. Urbano testified as a prosecution witness and incriminated Petitioner; (2) he was prejudiced, in violation of the Sixth Amendment, when Ms. Vanwie obtained privileged information from Mr. Urbano by interfering in their attorney-client relationship; (3) Ms. Vanwie's intrusion into the attorney-client relationship violated his Sixth Amendment right to the assistance of counsel when Ms. Vanwie used Mr. Urbano's testimony to establish elements of the state's case; (4) Mr. Valverde's breach of the duty of loyalty and "conflicted status and collusion with the state" was a "cognizable claim under Rule 32, denial of counsel"; (5) Petitioner was denied counsel when Mr. Valverde formed an opinion and acted upon the belief that Petitioner should be convicted and serve a long prison sentence; (6) Ms. Vanwie engaged in prosecutorial misconduct by improperly conferring a gift upon Mr. Valverde's family during trial; (7) the jurors and prosecutor engaged in misconduct which Petitioner became aware of only after his direct appeal, thus constituting newly discovered evidence; (8) Ms. Vanwie withheld exculpatory evidence which Petitioner only learned of after his direct appeal, thus constituting newly discovered evidence; (9) Fish v. Arizona constituted a significant change in the law affecting the trial court's rulings regarding jury instructions and the preclusion of his defense witnesses; (10) Skilling v. United States constituted a significant change in the law, nullifying his conviction for "a scheme of non-disclosure and concealment of material information"; (11) appellate counsel was ineffective for failing to raise meritorious claims; and (12) the trial court violated his Sixth Amendment right to counsel when Mr. Urbano was allowed

to testify against Petitioner on an "issue fundamental to the Government's case" and when Mr. Urbano withdrew prior to trial after the state advised him that he would be called as a witness.  Petitioner also claimed that he was entitled to an evidentiary hearing on claims 6, 7, and 8.  Id., Exh. MM.

In a memorandum decision issued on November 13, 2013, the Arizona Court of Appeals granted review but denied relief.  Id., Exh. SS. The Arizona Court of Appeals found that Petitioner's claims that Mr. Urbano was ineffective in his representation were without merit because Mr. Urbano did not represent Petitioner in the 2006 case, and therefore, could not have been ineffective.  Id., Exh. SS.  To the extent Petitioner wanted to challenge the admission of Mr. Urbano's testimony, however, the court held that he should have asserted such a claim based on a legal theory other than ineffective assistance of counsel in his direct appeal.  Id., Exh. SS.  The appellate court found Petitioner's prosecutorial misconduct claims were precluded because they could have been raised on appeal.  Id., Exh. SS.  The appellate court noted that this was true despite Petitioner having framed his third claim for relief—regarding Ms. Vanwie's intrusion into his attorney-client relationship with Mr. Urbano—as an ineffective assistance of counsel claim because it was in fact a claim of prosecutorial misconduct.  Id., Exh. SS. The court held that, because Petitioner could have raised his claim of juror misconduct on appeal but did not do so, the claim was precluded.  Id., Exh. SS.

The Court of Appeals also held that Petitioner had failed to provide any support for his claim that Ms. Vanwie withheld exculpatory evidence and found Petitioner had failed to explain how any evidence was newly discovered.  Id., Exh. SS.  The appellate court rejected Petitioner's claims that Skilling applied to this case and that his appellate counsel was ineffective, finding Petitioner had merely directed the court to his petition below for the merits of these arguments and that Petitioner had failed to provide any support for his assertion that the state court erred by dismissing these claims.  Id., Exh. SS.

The Arizona Court of Appeals further held that there was no legally cognizable claim for ineffective assistance of advisory counsel and that Mr. Valverde had not

breached his duty of loyalty in his capacity as advisory counsel.  Id., Exh. SS.  The court rejected Petitioner's claim that Mr. Valverde was ineffective at sentencing, finding that Petitioner had failed to identify what counsel could or should have done at sentencing that would have affected the outcome.  Id., Exh. SS.  The appellate court found that Petitioner had not established that Fish was a significant change in the law pursuant to Rule 32.1(g), Arizona Rules of Criminal Procedure.  Id., Exh. SS.  The court rejected Petitioner's claims that the trial court should have recused itself and also rejected the claim that the trial court erred by permitting Mr. Urbano to testify, because Petitioner did not raise these issues in the trial court.  The Court of Appeals also found Petitioner's claim that the trial judge should have recused himself was wholly undeveloped and unsupported by the record. Id., Exh. SS.

In his federal habeas petition Petitioner asserts:

(1) Petitioner's Sixth Amendment right to self-representation was intentionally violated by his advisory counsel.

(2) Petitioner's Sixth Amendment right to the effective assistance of counsel and his Fifth Amendment rights to due process and to not incriminate himself were violated when his former defense counsel testified against him as a State's witness.

(3) Petitioner's Sixth Amendment right to the effective assistance of counsel was violated when the prosecutor intentionally intruded upon the attorney-client relationship between Petitioner and his attorneys.

(4) Petitioner's due process rights under the Fifth and Fourteenth Amendments were violated when his former defense counsel testified as a State's witness.

(5) Petitioner's Fourteenth Amendment right to due process was violated when the prosecutor illegally suppressed exculpatory evidence.

(6) Petitioner's Sixth Amendment right to the effective assistance of counsel was violated when his advisory counsel interfered with Petitioner's right to self-representation by editing Petitioner's prepared questions for his direct testimony.

(7) Petitioner's Sixth Amendment right to effective appellate counsel was violated when his appeals attorney failed to submit meritorious claims on direct appeal.

(8) Petitioner's due process rights under the Fifth and Fourteenth Amendments were violated when the prosecutor failed to disclose juror misconduct to the defense.

(9) Petitioner's Sixth Amendment right to self-representation and Fifth Amendment right to due process and "freedom from self-incrimination" were violated by the prosecutor's "subversion of privileged content between Petitioner and his advisory counsel," which the prosecutor used to gain an advantage at trial.

(10) Petitioner's Sixth Amendment right to the effective assistance of counsel and Fifth Amendment rights to due process and to be free from self-incrimination were violated when the State dismissed the first indictment and re-indicted Petitioner.

(11) Petitioner's Fourteenth Amendment right to due process was violated because there was insufficient evidence to prove beyond a reasonable doubt every fact necessary to prove the crimes of fraudulent schemes and theft by material omission.

Answer at 14-16, citing Doc. 16.

Respondents contend:

This Court should not review the merits of Ground VI of the habeas petition because it does not state a federally cognizable claim, and this Court can grant habeas relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treatises of the United States." 28 U.S.C. § 2254(a).

In Ground VI, Petitioner contends that his Sixth Amendment right to the effective assistance of counsel was violated when advisory counsel Valverde interfered with his right to self-representation by editing his prepared questions for his direct testimony. (Docket # 16.) Petitioner, however, does not have a constitutional right to the effective assistance of advisory counsel. "A defendant has the right to represent himself or herself pro se or to be represented by an attorney. However, a 'defendant does not have a constitutional right to 'hybrid' representation' at trial." U.S. v. Olano, 62 F.3d 1180, 1193 (9th Cir.1995) (citations omitted). Where a defendant has no constitutional right to counsel, he cannot be deprived of constitutionally required effective assistance. Wainwright v. Torna, 455 U.S. 586, 588 (1982);

Petitioner's Ground I, III through X, and XIII claims are procedurally defaulted. Because Petitioner has not presented a viable excuse for his procedural default, this Court should deny Grounds I, III through X, and XIII of the instant petition and dismiss them with prejudice.

Petitioner's Grounds I through X, XII, and XIII claims are unexhausted and procedurally defaulted.

Grounds I through X, XII, and XIII were not exhausted in the Arizona state courts, and are now procedurally defaulted.

1

2

> Because Petitioner never raised Grounds I, II, IV, and X in the state courts, his claims are unexhausted and procedurally defaulted.
> Petitioner never raised Grounds I, IV, X, and part of II in any state court. Accordingly, Petitioner failed to exhaust these claims, and they are now procedurally defaulted.

3

4

5   Id. at 17.

6       **II Analysis**

7       **A. Exhaustion and procedural default**

8       Absent specific circumstances, the District Court may only grant federal habeas

9   relief on the merits of a claim which has been "properly" exhausted in the state courts.

10  See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman

11  v. Thompson, 501 U.S. 722, 729–30, 111 S. Ct. 2546, 2554–55 (1991). To properly

12  exhaust a federal habeas claim, the petitioner must afford the state courts the opportunity

13  to rule upon the merits of the claim by "fairly presenting" the claim to the state's

14  "highest" court in a procedurally correct manner. See, e.g., Castille v. Peoples, 489 U.S.

15  346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v. Palmateer, 395 F.3d 1108, 1110 (9th Cir.

16  2005). The Ninth Circuit Court of Appeals has concluded that, in non-capital cases

17  arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the

18  habeas petitioner presented his claim to the Arizona Court of Appeals, either in a direct

19  appeal or in a petition for post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008,

20  1010 (9th Cir. 1999). See also Date v. Schriro, 619 F. Supp. 2d 736, 762-63 (D. Ariz.

21  2008); Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007).

22      To satisfy the "fair presentment" prong of the exhaustion requirement, the

23  petitioner must present "both the operative facts and the legal principles that control each

24  claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001). See

25  also Woods v. Sinclair, 764 F.3d 1109, 1129 (9th Cir. 2014), petition for cert. filed No.

26  14-931 (Jan. 28, 2015). In Baldwin v. Reese, the Supreme Court reiterated that the

27  purpose of exhaustion is to give the states the opportunity to pass upon and correct

28  alleged constitutional errors. See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004).

Therefore, if the petitioner did not present the federal habeas claim to the state court as

asserting the violation of a specific federal constitutional right, as opposed to violation of a state law or a state procedural rule, the federal habeas claim was not "fairly presented" to the state court. See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351.  See also Arrendondo v. Neven, 763 F.3d 1122, 1138 (9th Cir. 2014).

However,

> [The] AEDPA "leav[es] 'primary responsibility' for adjudicating federal claims to the States." Johnson v. Williams, [] 133 S.Ct. 1088, 1097, 185 L.Ed.2d 105 (2013) (citing Woodford v. Visciotti, 537 U.S. 19, 27, 123 S.Ct. 357, [] (2002)). It follows that absent "evidence lead[ing] very clearly to the conclusion that a federal claim was inadvertently overlooked in state court," a federal habeas court presumes that the state court reached a petitioner's fairly presented federal claim. Id.

Williams v. Swarthout, 771 F.3d 501, 506  (9th Cir. 2014)

In order to fulfill exhaustion requirements, a petitioner must present to the state courts the "substantial equivalent" of the claim presented in federal court.  Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 513–14 (1971); Dickens v. Ryan, 740 F.3d 1302, 1318-19 (9th Cir. 2014); Libberton v. Ryan, 583 F.3d 1147, 1164 (9th Cir. 2009). Full and fair presentation requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.  See Arrendondo, 763 F.3d at 1138; Gulbrandson v. Ryan, 738 F.3d 976, 992 (9th Cir.), cert. denied, 134 S.Ct. 2823 (2013); Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009); Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir. 2007).  Although a habeas petitioner need not recite "book and verse on the federal constitution" to fairly present a claim to the state courts, Picard, 404 U.S. at 277–78, 92 S. Ct. at 512–13, they must do more than present the facts necessary to support the federal claim.  See Duncan v. Henry, 513 U.S. 364, 366, 115 S.Ct. 887, 888 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts. See, e.g., Woodford v. Ngo, 548 U.S. 81, 92–93, 126 S. Ct. 2378, 2387 (2006). If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim. See, e.g., id., 548 U.S. at 92, 126 S. Ct. at 2387.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims. See Castille, 489 U.S. at 351–52, 109 S. Ct. at 1060. Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594–95 (1991); Coleman v. Thompson, 501 U.S. 722, 727–28, 111 S. Ct. 2546, 2553–57(1991); Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002). "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

In Arizona, claims not previously presented to the state courts in either a direct appeal or on collateral review in an action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive Rule 32 action is permitted. See Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a) & (b) (successive petitions are limited to claims of being held in custody beyond sentence expiration, newly-discovered material facts, requests for

delayed appeal, significant change in the law retroactively applicable that would probably overturn conviction or sentence, and actual innocence); Spreitz v. Ryan, 617 F. Supp. 2d 887, 899–900 (D. Ariz. 2009).

> For the procedural default rule to apply, "the application of the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief." Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) (amended) (internal quotation marks and citations omitted). Arizona's waiver rules are independent and adequate bases for denying relief. Stewart v. Smith, 536 U.S. 856, 859–60, 122 S.Ct. 2578, [] (2002) [] (holding denials pursuant to Arizona waiver rules are independent of federal law); Ortiz v. Stewart, 149 F.3d 923, 931–32 (9th Cir. 1998) (finding Arizona waiver rule consistently and regularly applied).

Hurles v. Ryan, 752 F.3d 768, 780 (9th Cir.), cert. denied, 135 S.Ct. 710 (2014).

To constitute an adequate and independent state procedural ground sufficient to support a state court's finding of procedural default, "a state rule must be clear, consistently applied, and well-established at the time of [the] petitioner's purported default." Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001). See also Murray v. Schriro, 745 F.3d 984, 1015-16 (9th Cir. 2014). A state rule is considered consistently applied and well-established if the state courts follow it in the "vast majority of cases." Scott, 567 F.3d at 580, quoting Dugger v. Adams, 489 U.S. 401, 417 n.6, 109 S. Ct. 1211, 1221 n.6 (1989). Additionally, for the proffered state procedural bar to preclude the consideration of a habeas claim "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638–39 (1985). See also Harris v. Reed, 489 U.S. 255, 261–62, 109 S. Ct. 1038, 1042 (1989).

> "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S.Ct. 1038, [] .... Sanders v. Cotton, 398 F.3d 572, 580 (7th Cir. 2005) (where the state appellate court's discussion of waiver is intertwined with its merits analysis, the state court's decision does not rest on an independent and adequate state law ground)...

Pole v. Randolph, 570 F.3d 922, 937 (7th Cir. 2009) (some internal citations and quotations omitted).  See also Scott, 567 F.3d at 581–82.

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims, which have been found to be consistently applied and well-established, bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not fairly presented to the Arizona Court of Appeals in his direct appeal or in his Rule 32 action.  See Hurles, 752 F.3d at 780; Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002).  See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar).

## B. Cause and prejudice

The Court may consider the merits of a procedurally defaulted claim if the petitioner establishes cause for their procedural default and prejudice arising from that default. "Cause" is a legitimate excuse for the petitioner's procedural default of the claim and "prejudice" is actual harm resulting from the alleged constitutional violation.  See Clabourne v. Ryan, 745 F.3d 362, 375 (9th Cir. 2014); Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).  Under the "cause" prong of this test, Petitioner bears the burden of establishing that some objective factor external to the defense impeded his compliance with Arizona's procedural rules.  See Detrich v. Ryan, 740 F.3d 1237, 1243-44 (9th Cir. 2013); Ha Van Nguyen v. Curry, 736 F.3d 1287, 1292 (9th Cir. 2013).  To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Detrich, 740 F.3d at 1243-44 (internal quotations omitted).

Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause.  See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982);

Thomas, 945 F.2d at 1123 n.10.  Generally, a petitioner's lack of legal expertise is not cause to excuse procedural default.  See, e.g., Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 908 (9th Cir. 1986).   A state criminal defendant does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings.  See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 555,  107 S. Ct. 1990, 1993 (1987); Graves v. McEwen, 731 F.3d 876, 878 (9th Cir. 2013).  Accordingly, the general rule is that errors of counsel during a state post-conviction action cannot constitute "cause" to excuse the procedural default of a federal habeas claim.  See, e.g., Coleman, 501 U.S. at 752, 111 S. Ct. at 2565; Clabourne, 745 F.3d at 374.  However, the Supreme Court's opinion in Martinez v. Ryan, 132 S. Ct. 1309 (2012), established a limited exception to this general rule, which exception applies only to Sixth Amendment ineffective assistance of counsel claims.   Martinez held that inadequate assistance of post-conviction counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  Id. at 1315.  In Ha Van Nguyen v. Curry, 736 F.3d 1287 (9th Cir. 2013), the Ninth Circuit expanded Martinez, holding that this doctrine can also apply to excuse the procedural default of claims asserting ineffective assistance of direct appeal counsel.

In Trevino v. Thaler, the Supreme Court delineated the Martinez analysis as consisting of four prongs:

> We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

133 S. Ct. 1911, 1918 (2013), citing Martinez, 132 S. Ct. at 1318–19, 1320–21 (alterations in original).

The first prong of this test requires a petitioner seeking to rely on Martinez to bring forward facts demonstrating that his underlying ineffective assistance of trial or appellate counsel claim is substantial. The Supreme Court has defined "substantial" as a claim that "has some merit." Martinez, 132 S. Ct. at 1318.  Stated inversely, a claim is "insubstantial" if "it does not have any merit or ... is wholly without factual support." Id. at 1319. Determining whether an ineffective assistance of counsel claim is substantial requires the Court to examine the claim under the standard stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). A petitioner asserting ineffective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." Id., 466 U.S. at 687, 104 S. Ct. at 2064.  Additionally, not just any error or omission of counsel will be deemed "deficient performance" that will satisfy Martinez; if post-conviction counsel "in the initial-review collateral proceeding did not perform below constitutional standards," that attorney's performance does not constitute "cause." 132 S. Ct. at 1319.  Most notably, counsel "is not necessarily ineffective for failing to raise even a non-frivolous claim," much less a frivolous claim.  Sexton v. Cozner, 679 F.3d 1150, 1157 (9th Cir. 2012) (emphasis added).

To establish prejudice arising from a procedural default of a habeas claim in the state courts, the petitioner must show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting his criminal proceedings with constitutional violations.  See Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Correll v. Stewart, 137 F.3d 1404, 1415–16 (9th Cir. 1998).  Establishing prejudice requires a petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes. See Manning v. Foster, 224 F.3d 1129, 1135–36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999).  The Ninth Circuit Court of Appeals has also stated that prejudice is established by a petitioner's "actual innocence."  See Vosgien v. Persson, 742 F.3d 1131, 1134-35 (9th Cir. 2014).

1

**C. Fundamental miscarriage of justice**

2      Review of the merits of a procedurally defaulted habeas claim is required if the

3  petitioner demonstrates review of the merits of the claim is necessary to prevent a

4  fundamental miscarriage of justice.  See Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct.

5  1847, 1852 (2004); Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995);

6  Murray v. Carrier, 477 U.S. 478, 485–86, 106 S. Ct. 2639, 2649 (1986).  A fundamental

7  miscarriage of justice occurs only when a constitutional violation has probably resulted in

8  the conviction of one who is factually innocent. See Murray, 477 U.S. at 485–86, 106 S.

9  Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual

10  innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental

11  miscarriage of justice" standard, a petitioner must establish by clear and convincing

12  evidence that no reasonable fact-finder could have found him guilty of the offenses

13  charged.  See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d

14  832, 842–43 (9th Cir. 2001).

15

**D. Standard of review of exhausted claims**

16      The Court may not grant a writ of habeas corpus to a state prisoner on a claim

17  adjudicated on the merits in state court proceedings unless the state court reached a

18  decision contrary to clearly established federal law or the state court decision was an

19  unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d);

20  Carey v. Musladin, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque,

21  555 F.3d 834, 838 (9th Cir. 2009).  "Under AEDPA, a federal court may not grant a

22  petition for a writ of habeas corpus unless the state court's adjudication on the merits was

23  'contrary to, or involved an unreasonable application of, clearly established Federal law,

24  as determined by the Supreme Court of the United States.'"  Lafler v. Cooper, 132 S. Ct.

25  1376, 1390 (2012), quoting 28 U.S.C. § 2254(d)(1).

26          Clearly established Federal law for purposes of § 2254(d)(1) includes only
          the holdings, as opposed to the dicta, of this Court's decisions.  And an
27          unreasonable application of those holdings must be objectively
          unreasonable, not merely wrong; even clear error will not suffice.  Rather,
28          as a condition for obtaining habeas corpus from a federal court, a state

prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

White v. Woodall, 134 S.Ct. 1697, 1702 (2014) (internal citations and quotations omitted).

The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue." Murray v. Schriro 746 F.3d at 441, quoting Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

A state court applies a clearly established standard unreasonably only if no "reasonable interpretation of the controlling [Supreme Court] standard" can "support [the state court's] legal ruling." Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, [] (2007). So, when evaluating the reasonableness of a state court's application of a general standard, we must defer to any "principled reason for the state court to distinguish between the case before it and Supreme Court precedent." Murdoch v. Castro, 609 F.3d 983, 992 (9th Cir. 2010) (en banc). Moreover, § 2254(d)(1), the Supreme Court recently explained,

does not require state courts to extend [a Supreme Court] precedent or license federal courts to treat the failure to do so as error. Thus, "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law."

White, 134 S.Ct. at 1706 (internal citations omitted) (quoting Yarborough, 541 U.S. at 666, 124 S.Ct. 2140).

Arrendondo, 763 F.3d at 1133-34.

Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fair

minded disagreement." <u>Harrington v. Richter</u>, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. <u>Id.</u>, at ——, 131 S.Ct., at 786 (internal quotation marks omitted).

<u>Burt v. Titlow</u>, 134 S.Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in *United States Supreme Court opinions*, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result.   See, e.g., <u>Brown v. Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); <u>Soto v. Ryan</u>, 760 F.3d 947, 957 (9th Cir. 2014); <u>Runningeagle v. Ryan</u>, 686 F.3d 758, 785 (9th Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 2766 (2013).

The "only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision." <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003), <u>overruled on other grounds by Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, [] (2003). If Supreme Court "cases give no clear answer to the question presented ... it cannot be said that the state court unreasonably applied clearly established Federal law." <u>Wright v. Van Patten</u>, 552 U.S. 120, 126, 128 S.Ct. 743, [] (2008) (internal quotation marks omitted). In other words, "'[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].'" <u>Richter</u>, 131 S.Ct. at 786 (quoting <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122, 129 S.Ct. 1411, [] (2009)).

<u>McKinney v. Ryan</u>, 730 F.3d 903, 909 (9th Cir. 2013).

To satisfy the "unreasonable application" portion of the first prong, the petitioner must demonstrate that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but "objectively unreasonable." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 123 S.Ct. 357, 360 (2002). "While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law.'"

Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002) (quoting Van Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000)...[]

Davis v. Woodford, 384 F.3d 628, 637-38 (9th Cir. 2004).  See also Woods, 764 F.3d at 1121.

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. See McNeal v. Adams, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000).  See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010).  However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable.  See, e.g., Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010); Runningeagle, 686 F.3d at 785.  An unreasonable application of law is different from an incorrect one.  See Renico, 130 S. Ct. at 1862; Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005).  "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case."  Adamson v. Cathel, 633 F.3d 248, 255–56 (3d Cir. 2011).  See also Howard v. Clark, 608 F.3d 563, 567–68 (9th Cir. 2010).

Pursuant to section 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Burt, 134 S.Ct. at 15 (internal quotation marks and citation omitted), quoted by Clark v. Arnold, 769 F.3d 711, 724-25 (9th Cir. 2014).  Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with

clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Miller–El v. Dretke, 545 U.S. 231, 240–41, 125 S. Ct. 2317, 2325 (2005); Miller–El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Runningeagle, 686 F.3d at 763 n.1; Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007); Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304–05 (1982).  Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  See also Murray v. Schriro, 745 F.3d at 998.

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires.  See Lafler, 132 S. Ct. 1389-90; Panetti v. Quarterman, 551 U.S. 930, 953–54, 127 S. Ct. 2842, 2858–59 (2007); Amado v. Gonzalez, 758 F.3d 1119, 1131 (9th Cir. 2014); Runningeagle, 686 F.3d at 785-86; Greenway v. Schriro, 653 F.3d 790, 805–06 (9th Cir. 2011); Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008).

**E. Petitioner's claims for relief**

**1. Petitioner assert his Sixth Amendment right to self-representation was violated by his advisory counsel.**

Petitioner argues that his Sixth Amendment right to self-representation was violated by his appointed advisory counsel, Mr. Valverde, because, Petitioner alleges, Mr. Valverde "re-wrote" the questions that Petitioner had prepared for his direct testimony.  Respondents contend that, although Petitioner presented similar claims in the state courts, i.e., Petitioner alleged in his Rule 32 action that Mr. Valverde was

ineffective in his role as advisory counsel, Petitioner never argued in the state courts that his right to self-representation was violated. Respondents maintain, accordingly, that Petitioner procedurally defaulted this claim in the state courts. See Doc. 25 (Answer) at 24, citing Exhs. II, MM & SS.

On December 4, 2007, Petitioner signed a waiver of counsel, choosing to represent himself at his criminal trial. Id., Exh. JJ at 3. Shortly thereafter, Mr. Valverde was appointed as advisory counsel. Id., Exh. JJ at 3. After Petitioner's trial, Petitioner asked to be represented by counsel in his sentencing proceedings and Mr. Valverde represented Petitioner during his sentencing proceedings. In his Rule 32 action Petitioner asserted that Mr. Valverde provided ineffective assistance of counsel because he did not ask Petitioner, during Petitioner's testimony, all of the questions Petitioner had prepared for Mr. Valverde to ask Petitioner. Petitioner also alleged the Mr. Valverde changed the nature of some of the questions Petitioner had prepared. In response, the state argued that, because Petitioner had chosen to represent himself at trial, no ineffective assistance of counsel claim could arise with regard to Mr. Valverde's performance at Petitioner's trial.

Petitioner did not properly exhaust a Faretta claim[3], i.e., that he was denied his right to represent himself in his criminal proceedings, in the state courts by presenting it to the state's "highest court" in his direct appeal or a state action for post-conviction relief. Although Petitioner presented the "operative facts" of this claim to the state court, Petitioner did not present the legal predicate for this claim, i.e., any citation to or mention of Faretta or his federal constitutional right to self-representation, in his pleadings in the state courts subsequent to his conviction. Petitioner did not present a Faretta claim in his direct appeal, in which Petitioner was represented by counsel. See Answer, Exh. R & Exh. U. In his pro se brief in his Rule 32 action Petitioner alleged, *inter alia*, a claim of "Legal Counsel Misconduct", and he cited Brady v. Maryland, Skilling v. United States, and Strickland v. Washington in his pleading, however, he did not cite Faretta in his Rule

---

[3] Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533 (1975).

32 pleadings.

> While it is true that new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." Beaty v. Stewart, 303 F.3d 975, 989–90 ( [9th Cir.] 2002) (citing Vasquez, 474 U.S. at 260 [106 S.Ct. 617]). To do so deprives the state court of "a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." Vasquez, 474 U.S. at 257 [106 S.Ct. 617]. Here, Petitioner is not simply proffering additional evidentiary support for a factual theory presented to the state court. Rather, he is alleging an entirely new theory of counsel ineffectiveness; one that has not previously been presented in state court.

Poyson v. Ryan, 743 F.3d 1185, 1203 (9th Cir. 2013).

Petitioner did not allow the state courts to apply the correct "governing principles" of Faretta to the facts alleged by Petitioner because the claim was presented and analyzed as an ineffective assistance of counsel claim.  The Ninth Circuit Court of Appeals has concluded that a petitioner has "fairly presented" a claim not named in a petition if it is "sufficiently related" to an exhausted claim. See Lounsbury v. Thompson, 374 F.3d 785, 788 (9th Cir. 2004). Claims are "sufficiently related" or "intertwined" for exhaustion purposes when, by raising one claim, the petition clearly implies another error. See id. However, this exception does not apply when language in a petition for review indicates a petitioner's "strategic choice" not to present an issue for review.  See  id.; Wooten v. Kirkland, 540 F.3d 1019, 1025 (9th Cir. 2008).  In this matter it appears there was a strategic choice to not raise a Faretta claim in Petitioner's Rule 32 action, but instead to style it as an ineffective assistance of counsel claim, because a Faretta claim would be precluded by Petitioner's failure to raise it in his direct appeal.

Because Petitioner did not alert the state court to the legal theory he now relies on, Petitioner has procedurally defaulted this claim.  See Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277; Wooten , 540 F.3d at 1025–26; Rose v. Palmateer, 395 F.3d 1108, 1111-12 (9th Cir. 2005).  See also Picard, 404 U.S. at 277, 92 S.Ct. at 513 (rejecting as procedurally defaulted an equal protection claim that "entered this case only because the Court of Appeals injected it").

Because the time for Petitioner to raise this claim in state court has expired, see Rule 32.4 and Rule 32.1, Arizona Rules of Criminal Procedure, he has procedurally defaulted this claim and federal habeas relief is unavailable absent a showing of cause and prejudice or a fundamental miscarriage of justice.

In response to the assertion that he procedurally defaulted this claim in the state courts, Petitioner asserts the state courts erred by applying the Strickland standard to the facts presented with regard to this claim, rather than Faretta. Petitioner alleges he properly presented this claim to the state courts as a Faretta claim. As noted supra, a review of Petitioner's pleadings in the state courts indicates he did not raise a Faretta claim.

> In this case, Cook was represented by pretrial counsel from August 1987 through April 1988. Cook then made a knowing, intelligent, and voluntary waiver of his right to counsel, and represented himself at his trial and sentencing hearing. Even if Cook's pretrial counsel performed deficiently during the seven months he represented Cook (a contention we reject below), Cook could have corrected those errors once he decided to represent himself. Faretta therefore precludes Cook from complaining about the "quality of his own defense."

Cook v. Ryan, 688 F.3d 598, 609 (9th Cir. 2012). See also Arrendondo, 763 F.3d at 1139-40.

Petitioner did not exhaust a Faretta claim in the state courts and has not shown cause for, nor prejudice arising from his procedural default of this claims. Nor has Petitioner established a fundamental miscarriage of justice will occur absent consideration of the merits of this claim because Petitioner asserts his legal rather than his factual innocence. Therefore, the Court should not consider granting federal habeas relief on the merits of this claim.

**2. Petitioner asserts his Sixth Amendment right to the effective assistance of counsel and his Fifth Amendment rights to due process and to not incriminate himself were violated when his former defense counsel testified as a witness for the prosecution at Petitioner's trial.**

Petitioner asserts that his right to the effective assistance of counsel and his Fifth Amendment rights to due process of law and to not incriminate himself were violated when his former defense counsel, Mr. Urbano, testified as a state's witness at Petitioner's trial.    In his Rule 32 action Petitioner asserted that he was denied his right to the effective assistance of counsel because Mr. Urbano testified against him.  In rejecting this claim the state court found that, because Mr. Urbano did not represent Petitioner during his 2008 criminal trial, Mr. Urbano did not engage in any performance which could have been unconstitutionally ineffective.  Respondents argue that the state court's decision with regard to this claim was neither contrary to nor an unreasonable application of federal law.

It is axiomatic that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541 (1975). Accordingly, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel .'" Id., 422 U.S. at 834 n.46, 95 S.Ct. at 2541 n.46.  See also Cook v. Ryan , 688 F.3d 598, 609 (9th Cir.), cert. denied, 133 S.Ct. 81 (2012).

Petitioner chose to represent himself at trial.  Therefore, if Mr. Urbano was not Petitioner's trial counsel, then as a matter of federal law any substandard trial representation and resulting prejudice was not the result of Mr. Urbano's acts.  The trial court's decision denying this claim was not clearly contrary to nor an unreasonably application of federal law.

**3. Petitioner contends his Sixth Amendment right to the effective assistance of counsel was violated when the prosecutor intentionally intruded upon the attorney-client relationship between Petitioner and his attorneys.**

Respondents assert:

> Petitioner's Ground III, V, VIII, and IX claims are unexhausted and procedurally defaulted. In Grounds III, V, VIII, and IX, Petitioner contends that prosecutor Vanwie violated his Fifth, Sixth, and Fourteenth Amendment rights by intruding upon his attorney-client relationships with Urbano and Valverde, illegally suppressing evidence, failing to disclose juror misconduct, and "subver[ting] privileged content between Petitioner and his advisory counsel." (Docket # 16.)
>
> The state court, however, expressly found that these prosecutorial misconduct claims were precluded pursuant to Rule 32.2(a)(3) because they could have been raised on direct appeal. (Exhibits LL & SS.) The state court further found that this was true even though Petitioner attempted to present one of them as an IAC claim because, despite its label, it was in fact a claim of prosecutorial misconduct. (Id.) There are no procedural avenues through which Petitioner can now return to state court and properly exhaust Grounds III, V, VIII, and IX, as they are not among those that can be brought in a successive PCR proceeding. See Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b).
>
> Petitioner again asserts that, as a result of the acts of someone other than his trial counsel, Petitioner's criminal proceedings were fundamentally unfair because he was denied his right to the effective assistance of trial counsel. This is not a logical nor cognizable argument, as the appropriate test to determine if a criminal defendant was denied their rights to the effective assistance of counsel requires an examination only of trial counsel's acts.

Doc. 25 at 25-26.

If the United States Supreme Court has not addressed a specific issue in its holdings, the state court's adjudication of the issue cannot be an unreasonable application of clearly established federal law. See Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007), citing Kane v. Garcia Espitia, 546 U.S. 9, 10, 126 S.Ct. 407, 408 (2006). Stated another way, if the issue raised by the petitioner "is an open question in the Supreme Court's jurisprudence," the Court may not issue a writ of habeas corpus on the basis that the state court unreasonably applied clearly established federal law by rejecting the

precise claim presented by the petitioner.  See Cook, 538 F.3d at 1016; Crater v. Galaza, 491 F.3d 1119, 1123 (9th Cir. 2007). The United States Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles, 129 S.Ct. at 1419, citing Wright, 552 U.S. at 124–25, 128 S.Ct. at 746–47.

The Magistrate Judge agrees with Respondents that Petitioner has not properly stated a cognizable claim for relief that he was denied his right to the effective assistance of trial counsel in the alleged manner, because the test for ineffective assistance of trial counsel involves examination of only his *counsel's* acts and whether the petitioner was prejudiced by his *counsel's* acts.  Because the Court is unaware of any opinion of the United States Supreme Court holding that the actions of a prosecutor deprived a defendant of ineffective assistance of counsel, and Petitioner cites to no such opinion, the state court's decision denying this claim was not clearly contrary to nor an unreasonable application of federal law.

**4. Petitioner alleges his right to due process of law was violated when his former defense counsel, Mr. Urbano, testified as a witness for the prosecution.**

Petitioner presented the factual predicate for this allegation of error in his Rule 32 action as a claim of ineffective assistance of counsel.  Attached to Petitioner's reply in support of his petition in his state Rule 32 action is a transcript from a hearing conducted September 17, 2008, during which Petitioner objected to the state's proposal to have Mr. Urbano testify for the state.  See Doc. 25 (Answer), Exh. KK, Attach. at 8-9.  Ms. Vanwie represented to the court that a witness/victim would testify at Petitioner's trial that Petitioner "used Mr. Urbano's name and called him one of his partners... They will be asking regarding whether or not he ever was partners with him in that vein...", in regard to the allegation that Petitioner represented himself as an attorney to potential clients in his "Divorce with Dignity" business.  Id., Exh. KK, Attach. at 9.  Mr. Urbano was also expected to testify that he had told the Arizona State Bar that he was not Petitioner's attorney "supervisor" with regard to the acts alleged in the indictment

asserting Petitioner defrauded clients by misrepresenting that he was a licensed attorney or that he was under the supervision of a licensed attorney.  Id., Exh. KK, Attach. at 10.

At the hearing, noting that no contemporaneous attorney-client relationship existed between Petitioner and Mr. Urbano, the trial court informed the parties as to the limitations of Mr. Urbano's testimony at trial in order to preserve the prior attorney-client relationship.   Id., Exh. KK, Attach. at 10.  The trial court's limitation of Mr. Urbano's testimony was also expressed on September 29, 2008.  See id., Exh. KK, Attach.  The state trial court stated:

> I ruled that you may testify about any business relationship you may have with Mr. Karpin, any supervisory capacity you may have with Mr. Karpin, any attorney paralegal relationship you may have had with Mr. Karpin.  But in terms of any legal advice where Mr. Karpin could be viewed as the client, I did grant Mr. Karpin's objection to any testimony about that.

Id., Exh. KK, Attach. at 129.  The rest of the transcript is Mr. Urbano's testimony, in which he does not divulge any information apparently derived from the attorney-client relationship.  Petitioner cross-examined Mr. Urbano.  Id., Exh. KK, Attach. at 131-179.

On June 25, 2012, the state trial court summarily dismissed Petitioner's Rule 32 action pursuant to Rule 32.6(c), for "the reasons stated in the State's response." Id., Exh. LL.  The Court of Appeals determined that, to the extent Petitioner challenged the admission of Mr. Urbano's testimony as a basis for vacating Petitioner's convictions, Petitioner should have asserted such a claim based on a legal theory other than ineffective assistance of counsel, i.e., as a claim of violation of his right to due process of law, in his direct appeal.

The last reasoned opinion of the state courts on this issue, i.e., the Arizona Court of Appeals' decision, found that an allegation that Mr. Urbano's testimony constituted ineffective assistance of counsel was not cognizable and that Petitioner had procedurally defaulted a claim that the admission of Mr. Urbano's testimony violated Petitioner's right to due process of law by failing to raise such a claim in his direct appeal.

Petitioner did not properly exhaust his federal habeas claim that allowing Mr. Urbano's testimony violated his federal constitutional right to due process of law in the

state courts.  The Arizona Court of Appeals determined that Petitioner had procedurally defaulted this claim.  Petitioner has not shown cause for nor prejudice arising from his procedural default of this claim because Mr. Urbano's testimony was not comprised of evidence used to prosecute Petitioner, which evidence derived from information protected by the attorney-client privilege.

The claim may also be denied on the merits, because the introduction of Mr. Urbano's testimony did not violate Petitioner's right to due process of law.  To rise to the level of a constitutional violation, introduced evidence must be of such quality as necessarily prevents a fair trial.  See, e.g., Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986). A due process violation occurs only if the admitted evidence was "irrelevant to the prosecution's case" and there was no permissible inferences that the jury could draw from the evidence.  McKinney v. Rees, 993 F.2d 1378, 1380 & 1384 (9th Cir. 1993) ("Evidence is considered irrelevant if it fails to make any fact of consequence more or less probable.").  See also, e.g., Jammal v. Van de Kamp, 926 F.2d 918, 919–20 (9th Cir. 1991).  Petitioner is only entitled to habeas relief on this claim if the trial court's evidentiary decision created an absence of fundamental fairness that "fatally infected the trial...." Ortiz-Sandoval v. Gomez, 81 F.3d 891, 897 (9th Cir. 1996)

The basis for Petitioner's claim is the argument that Mr. Urbano's testimony violated the attorney-client privilege established by Petitioner and Mr. Urbano during the eight days that Mr. Urbano represented Petitioner in criminal proceedings subsequent to his indictment in 2005.  However, the transcript reveals that Mr. Urbano did not testify as to any communication between himself and Petitioner in the context of their attorney-client relationship.  Accordingly, Mr. Urbano's testimony did not violate the attorney-client privilege.  See Murdoch v. Castro, 609 F.3d 983, 995 (9th Cir. 2010).[4]  Mr.

---

[4]

Because the attorney-client privilege protects only a communication between an attorney and a client, not the facts that are communicated, a defendant would remain free to question the witness about the underlying facts, just as happened here. Despite not having access to the letter, Murdoch was able to cross-examine Dinardo on a wide range of subjects, including Dinardo's earlier denial of involvement in the murder. As the Supreme Court has explained, the attorney-

Urbano's testimony was limited to his relationship with Petitioner in regard to Petitioner's desire to have Mr. Urbano "supervise" his mediation practice.  Mr. Urbano's testimony was relevant to establishing that Petitioner did not have the proper attorney "supervision" with regard to the acts alleged in the indictment.  Because Mr. Urbano's testimony was not irrelevant and there were permissible inferences to be drawn by the jury from his testimony, Petitioner's right to due process of law was not violated by the admission of this testimony.  Compare Alcala v. Woodford, 334 F.3d 862, 887 (9th Cir. 2003).

**5. Petitioner argues his right to due process of law was violated when the prosecutor illegally suppressed exculpatory evidence.**

Petitioner contends that Ms. Vanwie violated his Fourteenth Amendment right to due process of law by illegally suppressing evidence.  Petitioner contends the prosecutor suppressed the evidence of Ms. Crist, his "co-mediator."  Petitioner alleges Ms. Crist informed all of the clients that Petitioner was not a licensed attorney at the onset of "their" representation of clients in mediations.  Petitioner alleges Ms. Crist reviewed with clients involved in divorces a "non-attorney disclosure," which alerted these clients to the fact that Petitioner was not a licensed attorney.  Petitioner contends the defense could not locate Ms. Crist, to subpoena her to provide substantiating testimony, prior to his trial.  Petitioner alleges that, prior to his criminal trial, the prosecutor's investigator located Ms. Crist and obtained a taped statement from her which corroborated Petitioner's testimony.  Petitioner asserts this exculpatory evidence was not disclosed to the defense.  Petitioner alleges that the prosecutor informed defense counsel prior to trial that Ms. Crist could not be located and that, if the defense produced Ms. Crist, she would be prosecuted for crimes associated with Petitioner's businesses.

---

client privilege does not "create a broad 'zone of silence' over" the subject matter of the communication. "The privilege only protects disclosure of [the] communications [themselves]; it does not protect disclosure of the underlying facts," so long as the underlying facts can be proven without resort to the privileged materials. Upjohn, 449 U.S. at 395, 101 S.Ct. 677.

Petitioner raised a similar factual predicate for this claim in his Rule 32 action, alleging that he had "newly discovered evidence" that the prosecution had "suppressed" Ms. Crist's evidence.   The state court found that Petitioner's claim was one of prosecutorial misconduct, which was precluded pursuant to Rule 32.2(a)(3) because it could have been raised in his direct appeal.  The court further found:

> Karpin likewise fails to provide any support for his argument that the prosecutor withheld exculpatory evidence, a claim he characterizes as one of newly discovered evidence pursuant to Rule 32.1(e)(claim eight).  Other than stating the evidence "was discovered post-trial and occurred outside the purview of J. Granville's court[]room," and directing this court to the affidavit he attached to his petition below, Karpin fails to explain why it is newly discovered and why he was entitled to relief on this ground....

Doc. 25 (Answer), Exh. SS at 4.

Petitioner raised this claim in the state courts, which found the claim precluded by Petitioner's failure to raise it in a procedurally correct fashion.  Petitioner has not shown cause for nor prejudice arising from his procedural default of this claim.  Petitioner has not presented any evidence, other than his own self-serving statement, to support the contention that the prosecution located Ms. Crist and tape-recorded an interview with her, or that Ms. Crist's testimony would have overcome the weight of the evidence presented against Petitioner.  Petitioner has not established that a fundamental miscarriage of justice will occur absent consideration of the merits of this claim.  Accordingly, habeas relief may not be granted on the basis of this procedurally defaulted claim.

**6. Petitioner asserts his right to the effective assistance of counsel was violated when his advisory counsel interfered with Petitioner's right to self-representation by editing the questions Petitioner had prepared questions for his direct testimony.**

Petitioner raised this claim in his state action for post-conviction relief.  The state appellate court determined that Petitioner had not properly delineated how counsel's alleged "editing" of the questions propounded to Petitioner in his own defense had resulted in prejudice to Petitioner.  This conclusion was not clearly contrary to, nor an unreasonable application of federal law because a state court defendant does not have a

1    federal constitutional right to the effective assistance of advisory counsel when the

2    defendant has waived the right to counsel and chosen to represent himself.   See, e.g.,

3    Faretta, 422 U.S. at 834 n.46, 95 S.Ct. at 2540 n.46 ("a defendant who elects to represent

4    himself cannot thereafter complain that the quality of his own defense amounted to a

5    denial of 'effective assistance of counsel.'").  Therefore, to the extent Petitioner asserts an

6    ineffective assistance of counsel claim regarding his advisory counsel's performance at

7    Petitioner's criminal trial, the claim is not cognizable in an habeas action.

8    **7.    Petitioner argues that his Sixth Amendment right to the effective**

9    **assistance of appellate counsel was violated when his attorney failed to submit**

10   **meritorious claims in Petitioner's direct appeal.**

11   Petitioner asserted an ineffective assistance of appellate counsel claim in his state

12   Rule 32 action.  In his pro se brief to the trial court Petitioner asserted his appellate

13   counsel's performance was deficient because counsel did not raise specific issues in the

14   appeal, i.e., the preclusion of witnesses, the refusal of particular jury instructions, juror

15   misconduct, the refusal to grant a mistrial after "misconduct" by a witness, allowing Mr.

16   Urbano's testimony, the trial court's granting of motions to preclude evidence, and

17   prosecutorial misconduct by Mr. Thomas.

18   In response the state argued that Petitioner's appellate counsel was not ineffective

19   for not pressing the claims specified by Petitioner in Petitioner's direct appeal, but instead

20   asserting in Petitioner's appeal that the trial court abused its discretion in denying

21   Petitioner's motion for an acquittal and that there was insufficient evidence to support the

22   jury's guilty verdicts.  The state argued, *inter alia*, that appellate counsel's performance

23   could not be judged as deficient and prejudicial where counsel "fail[ed] to raise minor

24   and arguably frivolous claims."  Doc. 25 (Answer), Exh. KK at 19.  The state trial court

25   denied relief in Petitioner's Rule 32 action without analysis, other than referencing the

26   state's responsive brief.

27   Petitioner appealed the trial court's denial of Rule 32 relief to the Arizona Court of

28   Appeals.  In denying relief on this claim and Petitioner's contention regarding Skilling,

the Arizona Court of Appeals stated:  "Karpin merely directs us to his petition below 'for

the merits of [these] claim[s] and argument[s],' while failing to provide any argument to support his assertion that the court erred by dismissing them.  *See* Ariz. R. Crim. P. 32.9(c); *Moody*, 208 Ariz. 424, n.9, 94 P.3d at 1147 n.9."  Answer, Exh. SS at 4.

The state court's conclusion that Petitioner was not denied his right to the effective assistance of appellate counsel was not clearly contrary to nor an unreasonable application of federal law.

The <u>Strickland</u> prejudice requirement applies to claims of ineffective assistance of appellate counsel:.  To prevail on the merits of a habeas claim of ineffective assistance of counsel, it is the habeas petitioner's burden to show that the state court applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner. "An unreasonable application of federal law is different from an incorrect application of federal law." <u>Woodford</u>, 537 U.S. at 25, 123 S.Ct. at 360 (internal quotations omitted). Vague or conclusory claims do not establish evidence sufficient to conclude the state court's decision was clearly contrary to federal law. See <u>Jones v. Gomez</u>, 66 F.3d 199, 205 (9th Cir. 1995); <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994).

> The Sixth Amendment right to effective assistance of counsel includes the right to effective appellate counsel. However, appellate counsel need not advance every possible argument, even those that are non-frivolous, and should instead concentrate his advocacy on winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. The two-part <u>Strickland</u> test, which the Court has used in evaluating claims of ineffective assistance of trial counsel, supra, also guides an analysis of claims of ineffective assistance of appellate counsel.

<u>Davis v. Singletary</u>, 853 F. Supp. 1492, 1549 (M.D. Fl. 1994) (internal quotations and citations omitted).

To succeed on an assertion his counsel's performance was deficient because counsel failed to raise a particular argument, either in his trial proceedings or in his direct appeal, the petitioner must establish the argument was likely to be successful, thereby establishing that he was prejudiced by his counsel's omission. See <u>Tanner v. McDaniel</u>, 493 F.3d 1135, 1144 (9th Cir. 2007); <u>Weaver v. Palmateer</u>, 455 F.3d 958, 970 (9th Cir.

2006). The appropriate inquiry is not whether raising a particular issue on appeal would have been frivolous, but whether there is a reasonable probability raising the issue would have led to the reversal of the petitioner's conviction. See Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989). If Petitioner had only a remote chance of obtaining reversal based upon a specific issue he alleges counsel should have raised, neither element of the Strickland test is satisfied. Id.

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, Strickland asks whether it is *reasonably likely* the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

Harrington v. Richter, 131 S.Ct. 770, 791-92 (2011) (internal quotation marks and citations omitted and emphasis added), quoted in Cannedy v. Adams, 706 F.3d 1148, 1162 (9th Cir. 2013).

Petitioner has not established that, had his appellate counsel raised any of the issues urged by Petitioner, there is a reasonable probability Petitioner's convictions would have been reversed. Accordingly, the state court's determination that Petitioner's appellate counsel's performance was not unconstitutionally ineffective was not clearly contrary to nor an unreasonable application of federal law. See Harrington, 131 S.Ct. at 732; Walker v. Martel, 709 F.3d 925, 943 (9th Cir. 2013); Cockett v. Ray, 333 F.3d 938, 944 (9th Cir. 2003); Douglas v. Woodford, 316 F.3d 1079, 1087 (9th Cir. 2003); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994); Morrison v. Estelle, 981 F.2d 425, 429 (9th Cir. 1992).

**8. Petitioner argues that his right to due process of law was violated because the prosecutor failed to disclose juror misconduct to the defense.**

In his state action for post-conviction relief Petitioner asserted that Ms. Vanwie failed to report to the trial court and to the defense juror misconduct involving access to

internet information about Petitioner and knowledge of a dismissed juror's contact with one of the state's witnesses.  Petitioner also asserted Ms. Vanwie's "friend[ing]" of jurors and witnesses upon the trial's conclusion constituted prosecutorial misconduct.  The state court found Petitioner's prosecutorial misconduct claims were precluded pursuant to Rule 32.2(a)(3) because they could have been but were not raised in his direct appeal.  See Answer, Exhs. LL & SS.   Petitioner has not shown cause for, nor prejudice arising from his failure to properly exhaust this claim in the state courts.

Even if not properly exhausted, this claim can be denied on the merits.  The events Petitioner asserts constituted "juror misconduct" do not rise to the level of juror misconduct.  See Tong Xiong v. Felker, 681 F.3d 1067, 1076-77 (9th Cir. 2012) (discussing relevant case law).   Accordingly, Petitioner's right to due process was not violated by Ms. Vanwie's alleged "failure" to alert the court to these events.   Neither could Ms. Vanwie's "friending" of trial participants after the entry of Petitioner's conviction affect the decision reached by the jury.

**9. Petitioner argues his Sixth Amendment right to self-representation and his Fifth Amendment right to due process and "freedom from self-incrimination" were violated by the prosecutor's "subversion of privileged content between Petitioner and his advisory counsel," which the prosecutor used to gain an advantage at trial.**

Petitioner alleges that Mr. Valverde supplied to Ms. Vanwie "defense plans and strategy, Karpin's emails, privileged communications, the content of cross examination questions for prosecution witnesses, Karpin's prepared questions for his direct testimony..."  Petitioner alleges that Mr. Valverde then "substituted" questions prepared by Ms. Vanwie in place of questions prepared by Petitioner when examining Petitioner on the stand.   Petitioner alleges that Mr. Valverde was essentially a "government instrument."

As noted supra, Petitioner did not raise a claim that he was denied his right to represent himself in his criminal proceedings in a procedurally correct manner in the state courts.   Accordingly, Petitioner has procedurally defaulted any claim premised on Faretta.  Additionally, Petitioner did not raise a claim that he was denied his right to be

free from self-incrimination in the state courts and, therefore, Petitioner has also procedurally defaulted this claim.   Because Petitioner has not shown cause for, nor prejudice arising from his procedural default of his claims, the Court should not consider the merits of the claims.

**10. Petitioner's Sixth Amendment right to the effective assistance of counsel and Fifth Amendment rights to due process and to be free from self-incrimination were violated when the state dismissed the first indictment and re-indicted Petitioner.**

Petitioner contends that his Sixth Amendment right to the effective assistance of counsel and Fifth Amendment rights to due process and to be free from self-incrimination were violated when the state dismissed the first indictment and re-indicted him in this case.  Respondents argue that, although Petitioner asserted in the state court that the state improperly obtained privileged information from Mr. Urbano that allowed it to re-indict Petitioner with additional counts, Petitioner asserted these facts only in alleging an ineffective assistance of counsel claim.  Answer at 25, <u>citing</u> Exhs. II, MM, SS.   In his brief to the Arizona Court of Appeals in his Rule 32 action, Petitioner alleged Mr. Urbano had "intimate knowledge" of and supervised Petitioner in his mediation practice. <u>See</u> Answer, Exh. NN at 4.  Petitioner states that, after Mr. Urbano withdrew from representing Petitioner in the 2005 matter the charges stated in the 2005 indictment were dismissed.   Petitioner states that the 2008 indictment contains the same "charges, evidence, witnesses and victims with a few added victims" as the 2005 indictment.  <u>Id.</u>, Exh. NN at 5.  Petitioner asserted the trial court erred by allowing Mr. Urbano

> to testify on an issue fundamental to the government's case: Whether there was a supervising, business or paralegal relationship between Urbano and Karpin.  Karpin's defense to all the allegations of theft and fraud was that he was Attorney Supervised, and therefore authorized under law as a legitimate mediation and document preparer service; A complete defense to the criminal charges.

<u>Id.</u>, Exh. NN at 6.

1    Petitioner did not properly exhaust this claim in the state courts as one asserting a
2    violation of his right to due process of law.  Petitioner has not established cause for nor
3    prejudice arising from his procedural default of this claim.  Additionally, the Magistrate
4    Judge is aware of no published Supreme Court opinion which finds that the dismissal
5    without prejudice and re-filing of charges violated a defendant's federal constitutional
6    rights, absent a showing that doing so violated the defendant's speedy trial rights and
7    resulted in prejudice.  See Blackledge v. Perry, 417 U.S. 21, 27–29, 94 S.Ct. 2098, 2102-
8    03 (1974) (holding that vindictiveness could be presumed where prosecutors brought
9    additional charges after a defendant appealed his conviction); Nunes v. Ramirez-Palmer,
10   485 F.3d 432, 441 (9th Cir. 2007)   Inter alia,  the United States Supreme Court has held
11   that a prosecutor can legitimately use the "threat" of  re-indicting a defendant on more
12   serious charges if they do not agree to a plea agreement without violating the defendant's
13   right to due process.  See Bordenkircher v. Hayes, 434 U.S. 357, 363-65, 98 S.Ct. 663,
14   668-69 (1978).  Accordingly, Petitioner's right to due process was not violated by his re-
15   indictment.

16       Petitioner's allegation that the state could only bring the additional charges
17   because they received information from Mr. Urbano which Mr. Urbano only obtained  in
18   the context of his brief attorney-client relationship with Petitioner conflicts with the
19   factual findings of the state court and the transcript of Mr. Urbano's testimony.   Mr.
20   Urbano testified only as to acts by Petitioner which occurred outside of their attorney-
21   client relationship.  Petitioner was not convicted on the charges in the indictment on
22   which he stood charged when Mr. Urbano was his counsel.  Accordingly, Mr. Urbano's
23   representation of Petitioner could not be considered either unconstitutionally deficient nor
24   prejudicial.  Therefore, to the extent Petitioner exhausted this claim in the state courts as
25   one asserting the violation of his right to the effective assistance of counsel, the state
26   court did not err in determining that Petitioner had failed to state a claim on which relief
27   could be granted.

28

**11. Petitioner's Fourteenth Amendment right to due process was violated because there was insufficient evidence to prove beyond a reasonable doubt every fact necessary to prove the crimes of fraudulent schemes and theft by material omission.**

In his direct appeal Petitioner argued that the trial court abused its discretion by denying his motion for acquittal pursuant to Rule 20, Arizona Rules of Criminal Procedure, and that there was insufficient evidence to support the jury's guilty verdicts. See Answer, Exh. R. Petitioner's brief in his direct appeal did not cite any federal constitutional provision or any opinion of a federal court with regard to this argument. The Arizona Court of Appeals issued a memorandum decision on October 12, 2010, affirming Petitioner's convictions and sentences. Id., Exh. T. In its decision the appellate court found that, in addition to Petitioner's own testimony, the state had met its burden of proof and had provided sufficient evidence that the trial court could properly deny Petitioner's Rule 20 motion. Id., Exh. T. The appellate court concluded that there was ample evidence presented at trial to support the jury's guilty verdicts. Id., Exh. T.

Petitioner did not properly exhaust this claim in the state courts as a federal constitutional claim. Petitioner has not shown that he was prejudiced by the failure to exhaust, because, assuming the Court could address the claim, the state court's decision that there was sufficient evidence to support Petitioner's convictions was not clearly contrary to nor an unreasonable application of federal law, i.e., the standard set forth in Jackson v. Virginia.

A due process claim based on insufficiency of the evidence can only succeed when, viewing all the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See, e.g., Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2789 (1979). When undertaking habeas review of a state court decision rejecting a claim of insufficiency of the evidence, the Court's inquiry is very limited; the Court may ask only whether the state court's decision was contrary to or reflected an unreasonable application of Jackson to the facts of a particular case. See Juan H. v. Allen, 408 F.3d 1262, 1274–75

(9th Cir. 2005).

> In reviewing the sufficiency of evidence, we may grant habeas relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, [] (1979); see also McDaniel v. Brown, [] 130 S.Ct. 665, 673 [] (2010) ... In this review, all evidence must be considered in the light most favorable to the prosecution, and we presume "that the trier of fact resolved any [conflicting inferences] in favor of the prosecution." Jackson, 443 U.S. at 326, 99 S.Ct. 2781. Furthermore, "[a]fter AEDPA, we apply the standards of Jackson with an additional layer of deference" to state court findings. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

Ngo v. Giurbino 651 F.3d 1112, 1115 (9th Cir. 2011).

Having thoroughly reviewed all of the pleadings in this matter and the portions of the record presented to the Court, the Court concludes that the Arizona Court of Appeals' decision denying Petitioner's claim of insufficiency of the evidence was not contrary to nor an unreasonable application of federal law. See Long v. Johnson, 736 F.3d 891, 896-97 (9th Cir. 2013); Bruce v. Terhune, 376 F.3d 950, 959–60 (9th Cir. 2004). Compare Garcia v. Carey, 395 F.3d 1099, 1102–04 (9th Cir. 2005). "[D]raw[ing] reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict," Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995), the Court concludes that a rational trier of fact could have found proof of guilt beyond a reasonable doubt. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**12. Petitioner contends his right to due process of law was violated because the trial court allowed the jury to convict him without requiring the state to prove "every element" of the crimes charged beyond a reasonable doubt.**

In his state action for post-conviction relief Petitioner argued that his rights to equal protection of the law and due process of law were violated because the state presented insufficient evidence to support his convictions for "theft based on a fraud theory"; Petitioner asserted there was no fraud because he was licensed to practice law in at least one jurisdiction, because each client signed a contract which disclosed

Petitioner's "non-attorney status," and because attorney Robert Green's supervision of Petitioner's activities was "adequate authority" to conduct legal work and prepare documents.  Answer, Exh. II.  In response, the state argued that Petitioner had not properly raised this claim and noted that Petitioner had alleged an insufficiency of the evidence claim in his direct appeal.  On June 25, 2012, the state trial court summarily dismissed Petitioner's Rule 32 action pursuant to Rule 32.6(c), for "the reasons stated in the State's response."  Id., Exh. LL.

As explained *supra*, Petitioner is unable to establish prejudice for any failure to properly exhaust in the state courts a claim that there was insufficient evidence of every "element" of the crimes of conviction to sustain his convictions in violation of his federal constitutional rights, because the record indicates the state appellate court properly found, in the context of considering Petitioner's argument that the trial court improperly denied his motion for acquittal pursuant to Rule 20, Arizona Rules of Criminal Procedure, that the state had met its burden of proving every element of the crimes alleged such that the jury could find beyond a reasonable doubt that Petitioner had committed those crimes. Petitioner has not brought "clear and convincing evidence", as compared to argument, which would establish facts contrary to the state appellate court's factual findings. Accordingly, Petitioner has not established prejudice arising from his procedural default of a claim of insufficient evidence in violation of his federal constitutional rights.

**13. Petitioner asserts his right to substantive due process right and his Sixth Amendment right to have "compulsory process for obtaining witnesses" were violated when the trial court barred all defense witnesses from testifying.**

At his trial, in addition to his own testimony,  Petitioner presented a witness who testified that an individual does not have to be a licensed attorney to practice law in the state of Arizona and that no special certification was required to conduct mediations.  See Answer, Exh. S at 72-78.  In his state action for post-conviction relief, in his brief to the state trial court, Petitioner alleged his appellate counsel's performance was unconstitutionally ineffective because counsel did not assert the trial court erred by precluding Petitioner's defense witnesses.  In his brief to the state appellate court in his

Rule 32 action Petitioner alleged that <u>Fish v. Arizona</u> constituted a significant change in the law affecting the trial court's rulings regarding jury instructions and the preclusion of his defense witnesses.

> Petitioner was entitled to the application of the change in the law <u>State</u> v. <u>Fish</u>, 222 Ariz. 109 (2009), which if applied in 2008, would have included an instruction that a material misrepresentation must be definition affect the outcome of the transaction.  Similarly, the application of <u>Fish</u>, would have allowed the testimony of defendant's precluded witnesses.

<u>Id.</u>, Exh. NN at 18.

The Arizona Court of Appeals found Petitioner had not established that <u>Fish</u> was a significant change in the law pursuant to Rule 32.1(g), Arizona Rules of Criminal Procedure.

Petitioner did not present the claim presented to this Court, regarding the right to compel witnesses, to the state courts.  Petitioner has not shown cause for nor prejudice arising from his procedural default of this claim because the trial court's exercise of its discretion to preclude certain defense witnesses was not a deprivation of Petitioner's federal constitutional rights.

Petitioner asserts the deprivation of interrelated constitutional guarantees that merge into the rule that a criminal defendant is entitled to "a meaningful opportunity to present a complete defense." <u>Crane v. Kentucky</u>, 476 U.S. 683, 690, 106 S.Ct. 2142, 2147-48 (1986). A criminal defendant has a well-recognized constitutional right to present a complete defense.  <u>See</u>, <u>e.g.</u>, <u>id.</u>, 476 U.S. at 690, 106 S.Ct. at 2147-48 ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'").  Necessary to the realization of this right is the ability to present evidence, including the testimony of witnesses.  <u>See</u>, <u>e.g.</u>, <u>Washington v. Texas</u>, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923  (1967).

However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," such as evidentiary and procedural rules.

United States v. Scheffer, 523 U.S. 303, 308, 118 S.Ct. 1261, 1264 (1998).  "[S]tate and federal rule makers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," id., and the Supreme Court has indicated its approval of "well-established rules of evidence" that permit state trial judges to exclude evidence. Holmes v. South Carolina, 547 U.S. 319, 326, 126 S.Ct. 1727, 1732-33 (2006); Montana v. Egelhoff, 518 U.S. 37, 53, 116 S.Ct. 2013, 2022 (1996) ("[T]he introduction of relevant evidence can be limited by the State for a 'valid' reason.").  The Supreme Court has observed that "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." Nevada v. Jackson, 133 S.Ct. 1990, 1992 (2013).  See also Phillips v. Herndon, 730 F.3d 773, 775-76 (9th Cir. 2013).  Defendants do not have a federal  constitutional right to present evidence that is irrelevant or otherwise inadmissible under evidentiary rules of procedure.  Davis v. Alaska, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109-10 (1974); Wood v. Alaska, 957 F.2d 1544, 1549–50 (9th Cir. 1992) ("[i]t is within the trial court's discretion to determine which issues are relevant").

Petitioner was able to present his defense to the charges against him, i.e., that he did not misrepresent to his clients that he was not a currently licensed attorney, that he did provide services to his clients, and that he was under the reasonable belief that he was being properly supervised by licensed attorneys, to the jury, notwithstanding the exclusion of any proposed witnesses.  Accordingly, Petitioner is not entitled to habeas relief based on the trial court's exclusion of testimony because he has not presented any Supreme Court opinion holding that the discretionary exclusion of his proposed witnesses warrants federal habeas relief under clearly established federal law.  See Brown v. Horell, 644 F.3d 969, 982–83 (9th Cir. 2011).  In Brown the Ninth Circuit Court of Appeals found: "Between the issuance of Moses and the present, the Supreme Court has not decided any case either squarely addressing the discretionary exclusion of evidence and the right to present a complete defense or establishing a controlling legal standard for evaluating such exclusions." Id. (internal quotations omitted), citing Moses v. Payne, 555 F.3d 742, 757–60 (9th Cir. 2009).      Nor has Petitioner established, even assuming

constitutional error, that the exclusion of this evidence had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714 (1993); Bains v. Cambra, 204 F.3d 964, 977 (9th Cir. 2000). Accordingly, Petitioner should not be grated relief on this habeas claim.

### III Conclusion

Petitioner did not exhaust most of his federal habeas claims in the Arizona state courts by fairly presenting them as federal constitutional claims to the state's highest court in a procedurally correct manner. Petitioner has not shown cause for, nor prejudice arising from his procedural default of these claims. Some of Petitioner's claims may be denied on the merits notwithstanding his failure to properly procedurally exhaust those claims and some claims are not cognizable in a federal habeas action. The claims which were decided by the state courts were not decided in a fashion that was clearly contrary to nor an unreasonable application of federal law. Therefore,

**IT IS RECOMMENDED that** Mr. Karpin's petition seeking a writ of habeas corpus be **denied** and **dismissed.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate

consideration of the issues.  See United States v. Reyna–Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right.

Dated this 5th day of March, 2015.


_____
Mark E. Aspey
United States Magistrate Judge